**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
MPHASIS CORPORATION,                          :
                Plaintiff,           :
                                         :    25-CV-3175 (JMF) (OTW)
      -against-                              :
                                         :    **OPINION AND ORDER ON**
ALBERT ROJAS,                                 :    **ORDER TO SHOW CAUSE,**
                Defendant.          :    **ECF 140**
                                           :
------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

This Order addresses the parties' response to my May 30 Order to Show Cause ("OSC") at ECF 140. For the following reasons, I find that Defendant has not shown cause why he should not be sanctioned for violating my Order regarding computer imaging, ECF 118 (the "Imaging Order"). Therefore, Defendant should be sanctioned pursuant to Fed. R. Civ. P. 16 and 37.

**I.  BACKGROUND**

The Court has reviewed the docket entries from May 29 through June 6, 2025 (ECF Nos. 137 – 205) to liberally construe Defendant's filings for responsiveness to the OSC. Accordingly, the Court has considered ECF Nos. 159 – 165; 167; 172; 173; 174; 177; 188; and 196 by Defendant, and ECF Nos. 195 and 197 by Plaintiff as responsive to the OSC. I will assume familiarity with the underlying facts and procedural history of this matter as recited in the OSC.

The facts relevant here are that on May 15, I issued the Imaging Order directing Defendant to bring his laptop to the Courthouse for forensic imaging on May 29. (ECF 118). The Imaging Order was entered to facilitate Defendant's compliance with Paragraph 6 of Judge

Furman's Temporary Restraining Order[1] at ECF 65 ("TRO"). Plaintiff arranged, at their expense, for a forensic examiner to come to my jury room to image Defendant's device(s).

Beginning approximately 20 hours before the imaging process was to take place, Defendant began filing motions (and emailing Chambers directly), which suggested that he sought to challenge the search procedures after the computer was imaged. (*See* ECF Nos. 141 - 148). I addressed these motions in my Order at ECF 136 (the "May 29 Order"). Ultimately, Defendant brought himself but brought none of the devices necessary for compliance with the Imaging Order. (ECF 140). As a result, Plaintiff was unable to image Defendant's laptop as directed in the Imaging Order, (ECF 140), and incurred costs for retaining and sending a forensic examiner to come to the Courthouse. I issued the OSC the next day, May 30, directing Defendant to show cause why he should not be sanctioned for refusing to bring the device(s) for imaging as the Court directed.

## II. DEFENDANT HAS NOT SHOWN CAUSE

Defendant asserts that he should not be sanctioned because: he engaged in "no willful defiance or disobedience;" that he offered "reasonable cooperation," and that he "filed over twenty sworn declarations, legal memoranda, and protective motions directly addressing [the OSC]" between May 27 and May 31 which purport to raise various Constitutional concerns and statutory privileges for his conduct. (ECF Nos. 188 at 1-2). While Judge Furman's Memorandum

---

[1] On June 9, prior to the TRO's expiration on June 10, Judge Furman entered a Preliminary Injunction (the "PI") at ECF 207. While both the TRO and PI are functionally similar, when Defendant failed to produce his laptop on May 29, the TRO was in effect. Accordingly, the OSC, the Imaging Order and this Order and Opinion address only the TRO rather than the PI.

Opinion and Order, (ECF 206), the Imaging Order, and the May 29 Order addressed these points already, I will address them again here in the interest of clarity.

### A. No "Good Faith" or Reasonable Compliance

First, it is undisputed that the Court ordered Defendant to bring his personal laptop, and he did not. Failing to do so violated the Imaging Order and Paragraph 6 of the TRO, which itself was based, in part, on Defendant's consent. Whether Defendant believed "in good faith" that he could refuse to bring his laptop, or that he could come to the Courthouse in person without his device(s), or that he came and departed the Courthouse peacefully, is immaterial.

Similarly, Defendant's arrival at my Courtroom on May 29, without his laptop, is in no way "cooperation" with the TRO or my Orders, let alone "reasonable cooperation." (ECF 188 at ¶ 5). The TRO directed Defendant to cooperate "in full . . . for a neutral forensic examiner selected by Mphasis to conduct an immediate forensic examination of Rojas'[s] personal Mac computer, including all email accounts, cloud accounts, and other relevant software and hardware." (ECF 65 ¶ 6). That language is clear and unequivocal. Failing to bring the very device(s) to be imaged frustrated compliance with the forensic imaging process.

In sum, even if Defendant believed that his conduct was privileged, there is no such thing as "good faith" compliance with an order for computer imaging when no computer was present.

### B. Fourth and Fifth Amendment Protections are Not Applicable in Civil Cases

Defendant raises privacy objections under the Fourth and Fifth Amendments and *United States v. Microsoft Corp.*, 584 U.S. 236 (2018). (ECF 196 at 1-2). Defendant's Fourth Amendment

objections and request for "guardrails" concern the scope[2] of the search and not the imaging of the hard drive. Moreover, the cases and Fourth Amendment provisions referenced in Defendant's filings are inapposite because they relate to suppression of evidence in criminal cases. *See United States v. Janis*, 428 U.S. 433, 447 (1976) ("In the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state"); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) ("[T]he central purpose of the Fourth Amendment was seen to be the protection of the individual against official searches for evidence to convict him of a crime").

"Since an assertion of the Fifth Amendment is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties." *United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 84 (2d Cir.1995). Thus, the Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976). *See also In re Drummon*, No. 24-CV-1668 (VEC), 2025 WL 1327191, at *8 (S.D.N.Y. May 7, 2025) ("Declining to answer questions during <u>civil</u> litigation based on one's Fifth Amendment rights … can lead to an adverse inference drawn against the party invoking the privilege") (emphasis added). As explained by Judge Hurley: "the invocation of the privilege results in a disadvantage to the

---

[2] *See e.g.* ECF 196 at 2 ("Defendant has already invoked the Fifth Amendment Protection against compelled testimonial production and has requested narrowly tailored scope protocols. These are not acts of obstruction- they are constitutionally grounded defenses against compelled access to devices used only because Mphasis failed to provide corporate hardware.")

4

opposing parties by keeping them from obtaining information that they could otherwise get." *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 26 (E.D.N.Y. 2013) (quoting *SEC v. Suman*, 684 F. Supp. 2d 378, 386 [S.D.N.Y. 2010], *aff'd,* 421 F. App'x 86 [2d Cir. 2011]).

Accordingly, Defendant should weigh the potential consequences of invoking the privilege in this civil case. If Defendant continues to assert that his Fifth Amendment rights are a basis for refusing to comply with the Court's Orders, the Court may find an adverse inference in favor of Plaintiff with respect to the information withheld by Defendant. *See United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923)*.* ("A party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence, and the claim of privilege will not prevent an adverse finding or even summary judgment…").

In sum, Defendant previously raised all the same Fourth and Fifth Amendment issues before and after the forensic imaging date with both Judge Furman and me. (ECF 206 at ¶4). As discussed previously, these Constitutional protections do not operate to block the civil discovery sought here.

### C. Federal Whistleblower Laws Do Not Create a Civil Discovery Privilege

Finally, Defendant claims "protected status" under federal whistleblower statutes, *inter alia*, § 806 of the Sarbane-Oxley Act of 2002, 18 U.S.C. § 1513(e), and the Defend Our Trade Secrets Act, 18 U.S.C. § 1833. Even assuming, *arguendo*, that Defendant is entitled to some form of federal whistleblower protection, he fails to articulate how that protection relates to the Imaging Order or creates a civil discovery privilege.

Several federal statutes prohibit retaliation against whistleblowers, each of which applies to a specific type of individual or misconduct. To wit, 5 U.S.C. § 1221 (protecting federal

5

employees from certain types of retaliation); 12 U.S.C. § 1441a(q) (protecting those reporting misconduct by the FDIC or the Thrift Depositor Protection Oversight Board); 18 U.S.C. § 1513(e) (Sarbanes Oxley provision for those who report corporate fraud);   31 U.S.C. § 3730(h) (False Claims Act whistleblower provision); and 33 U.S.C. § 1367 (protecting employees who report violations of Clean Water Act).

A required element to state a claim under any of these statutes is proof of an adverse employment action against the plaintiff. *See e.g. Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 710 F.3d 443, 451 (2d Cir. 2013) ("To prevail on a Sarbanes-Oxley whistleblower retaliation claim under 18 U.S.C. § 1514A, an employee must prove by a preponderance of the evidence that [1] he or she engaged in a protected activity; [2] the employer knew that he or she engaged in the protected activity; [3] he or she suffered an unfavorable personnel action; and [4] the protected activity was a contributing factor in the unfavorable action"). Clearly, Congress intended these protections to create a cause of action when an employer retaliates against an employee for reporting corporate law breaking, not as a privilege to assert in civil discovery. To the extent whistleblower protections may or may not apply to Defendant's termination, that is irrelevant here. None of the whistleblower statutes makes any reference to civil discovery protections, nor would they excuse Defendant's refusal to comply with the Imaging Order.

### III.   THE ATTORNEY'S FEES AND COSTS SUBMITTED BY PLAINTIFF ARE REASONABLE

Fed. R. Civ. P. 16 authorizes the imposition of sanctions—including those authorized by Rule 37—when a party fails to appear at a court-ordered conference, or fails to obey a

6

scheduling or other pretrial order. *See* Fed. R. Civ. P. 16, 37; *White v. Cnty. of Suffolk*, No. 20-CV-1501 (RER)(JMW), 2024 WL 2882842, at *17 (E.D.N.Y. June 7, 2024). As a direct result of Defendant's refusal to comply with the Court's Orders, Plaintiff incurred costs for arranging a forensic examiner to image Defendant's laptop at the Courthouse. Thus, compensatory monetary sanctions under Fed. R. Civ. P. 16 and 37 are reasonable. *See Yannitelli v. Navieras De Puerto Rico*, 106 F.R.D. 42, 44 (S.D.N.Y. 1985) ("The Court further finds that, pursuant to Fed. R. Civ. P. 16, an award of costs and attorney's fees is appropriate for [the plaintiff's] failure to appear at the April 12 pretrial conference").

When calculating attorney's fees, "The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended … multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "All applications for attorney's fees [must] be supported by contemporaneous records." *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) (citations omitted).

Here, Plaintiff submitted a contemporaneous timesheet for the costs incurred by Plaintiff's counsel to arrange for the forensic examiner to come to the Courthouse on May 29. (ECF 197). Plaintiff's timesheet bills a total of 6.5 hours at an hourly rate of $540, for a total of $3,510 billed time and no expenses. (ECF 197-1 at 2-3).

In addition, Plaintiff also submitted an invoice that itemizes the cost of the forensic examiner. The forensic examiner's hourly rate for a weekday collection is $275 per hour. (ECF 197-2 at 1-2). The examiner billed 6.8 hours for this task, totaling $1,870, inclusive of preparation for the collection and the time spent waiting to perform the collection. (ECF 197-2 at 1-2). The Cleveland-based forensic examiner billed 16.8 hours of travel time to New York

7

City, at the discounted rate of $125 an hour, for a total of $2,100. (ECF 197-2 at 7-8). The forensic examiner also incurred reasonable travel expenses of $1,469.41, including transportation and hotel. (ECF 197-2 at 7-8). Finally, the invoice also includes a forensic project manager who corresponded with Plaintiff's counsel about the data collection request and coordinated with the forensic examiner. (ECF 197-2 at 8). Their hourly rate is $175 for 1.4 hours, totaling $245. (ECF 197-2 at 7-8). In total, the forensic examination cost $5,684.41, comprised of $4,215 for billed time and $1,469.41 for expenses. (ECF 197-2 at 7).

Based on the "prevailing [hourly rate] in the community[3]," I find both the number of hours expended on arranging the forensic imaging and the hourly rate charged by Plaintiff's counsel and forensic examiner to be reasonable. The sum of Plaintiff's combined expenses incurred is $9,194.41, with $7,725 of billed time and $1,469.41 of expenses. Accordingly, I find this to be the appropriate monetary sanction to impose on Defendant.

IV.   **CONCLUSION**

For the foregoing reasons, I find that Defendant did not comply with the Imaging Order, and thus did not comply with Paragraph 6 of the TRO. Defendant has failed to show cause for his noncompliance and thus should be sanctioned under Fed. R. Civ. P. 16 and 37.

---

[3] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)).

Accordingly, Defendant is **ORDERED** to pay compensatory monetary sanctions in the amount of $**9,194.41** to Plaintiff no later than **September 30, 2025**.

**SO ORDERED.**

Dated: August 20, 2025
     New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge