UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MPHASIS CORPORATION,<br>Plaintiff,<br>-v-<br>ALBERT ROJAS,<br>Defendant. | 25-CV-3175 (JMF)<br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION |

JESSE M. FURMAN, United States District Judge:

On April 16, 2025, Plaintiff Mphasis Corporation ("Mphasis") brought this action against its former employee, Defendant Albert Rojas ("Rojas"), who is proceeding *pro se*, alleging trade secret misappropriation and other claims. ECF No. 1. On June 16, 2025, the Court referred the case to Magistrate Judge Ona Wang for general pretrial purposes and dispositive motions. ECF No. 231. On October 3, 2025, Magistrate Judge Wang issued a Report and Recommendation ("First R&R") recommending that Rojas's purported answer or answers, ECF Nos. 210, 213, 215, be stricken, *see* ECF No. 447 ("First R&R"), at 2. On January 13, 2026, she issued another Report and Recommendation ("Second R&R") recommending that Rojas be found in civil contempt of court and sanctioned under Rules 16 and 37 of the Federal Rules of Civil Procedure. *See* ECF No. 498 ("Second R&R"), at 1. Magistrate Judge Wang concluded — pursuant to her authority under 28 U.S.C. § 636(e) — that Mphasis had set forth a *prima facie* case for civil contempt based on a list of a facts certified to this Court. In particular, Magistrate Judge Wang found that Rojas had distributed confidential Mphasis materials, created spoof websites and fake

email accounts, contacted Mphasis's employees and clients, and failed to pay sanctions — all in violation of Court orders. *Id.* at 12-14.

In light of this conduct, the Second R&R recommended imposing the following sanctions: striking Rojas's answer or answers; entering a judgment of default; entering permanent injunctive relief; awarding compensatory sanctions in the form of Mphasis's attorneys' fees and costs resulting from Rojas's refusal to obey court orders; and granting Mphasis's request for monetary relief. *Id.* at 1-2. Rojas filed a timely objection to both the First R&R and the Second R&R, as well as a series of further submissions in support of his objections. ECF Nos. 448 ("Def.'s Obj. to First R&R"), 500 ("Def.'s Obj. Sum."), 501 ("Def.'s Obj."), 502 ("Rojas Decl."), 505 ("Def.'s Clar."), 507 (Rojas's Reply to Mphasis's letter). Mphasis also filed responses in support of the R&Rs. ECF Nos. 454 ("Mphasis Rep. to First R&R"), 506 ("Mphasis Rep.").

On February 4, 2026, the Court issued an Opinion and Order explaining that Section 636(e) required the Court to conduct a *de novo* hearing of Magistrate Wang's civil contempt recommendation. *See* ECF No. 508. The Court ordered the parties to file any declarations, affidavits, or exhibits they wished to rely on in advance of the hearing. *Id.* at 2. On March 12, 2026, the Court held an evidentiary hearing to determine if Rojas should be held in contempt and, if so, what sanctions were warranted. ECF No. 510. For the reasons that follow, the Court holds Rojas in civil contempt and adopts Magistrate Judge Wang's recommendation that the Court impose sanctions in the form of default, attorneys' fees, and a filing injunction. The Court re-refers the case to Magistrate Judge Wang to determine if default judgment should be entered and, if so, to hold an inquest as to damages.

## LEGAL STANDARDS

The Federal Magistrate Act limits Magistrate Judges' contempt authority and sets forth the relevant procedure for finding and acting on contempt. 28 U.S.C. § 636(e). In a civil case where the parties have not consented to the jurisdiction of a United States magistrate judge for all purposes, as here, and an act constitutes civil contempt,

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B)(iii). "In certifying the facts under Section 636(e), the magistrate judge's role is to determine whether the moving party can adduce sufficient evidence to establish a *prima facie* case of contempt." *Servaas Inc. v. Republic of Iraq*, No. 09-CV-1862 (RMB), 2013 WL 5913363, at *2 (S.D.N.Y. Nov. 4, 2013) (citing *Toxey v. United States*, No. 10-CV-3339 (RJH) (KNF), 2011 WL 4057665, at *2 (S.D.N.Y. Aug. 25, 2011)).

Upon certification by a magistrate judge of the facts supporting a finding of contempt, the district court is required to undertake a *de novo* hearing. *See Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 904, 907–08 (3d Cir. 1992) (holding that it was error for the district court not to conduct a *de novo* hearing after a magistrate judge issued a certification of contempt); *see also Telebrands Corp. v. Marc Glassman, Inc.*, No. 09-CV-734, 2012 WL 1050018, at *1 (D. Conn. Mar. 28, 2012) (explaining that "[t]he district judge, upon certification of the facts, is required to conduct a de *novo* hearing at which issues of fact and credibility determinations are to be made" (cleaned up)). "[T]he district court must make an independent determination of the facts certified and consider any additional evidence." *Sistem Muhendislik Insaat Sanayi Ve Ticaret,*

*A.S. v. Kyrgyz Republi*c, No. 12-CV-4502 (ALC), 2018 WL 5629900, at *1 (S.D.N.Y. Oct. 31, 2018) (citation and quotations omitted).

**FINDINGS OF FACT**

Magistrate Judge Wang set forth the relevant factual and procedural background in the Second R&R, familiarity with which is assumed. *See* Second R&R 1-10. For present purposes, it is sufficient to state that, since this action commenced in April 2025, Rojas has repeatedly failed to comply with Court orders. Three orders are especially relevant here.

First, on May 6, 2025, the Court issued a temporary restraining order ("TRO"), which provided as follows:

1. Rojas shall not, directly or indirectly, access, possess, disclose, and/or utilize for any purpose all confidential information, trade secrets, and other confidential or proprietary information owned, maintained, and/or utilized for the benefit of Mphasis, including but not limited to Mphasis emails and any documents, digital or hardcopy, created or used for Mphasis' clients.

2. Rojas shall cease using any email addresses impersonating Mphasis CEO Nitin Rakesh or an employee of Mphasis, including creating email domain names resembling that of Mphasis, its employees, or its Legal Department.

3. Rojas shall cease contacting Mphasis CEO Nitin Rakesh and employees Jitendra Borkar, Ruturaj Waghmode, Vinod Kumar, Charles Francis, and Shannon Mostafazadeh.

4. With Rojas's good-faith cooperation, Plaintiff shall arrange for QBE to provide a QBE generated Federal Express label and box to Rojas no later than May 8, 2025. If such a label and box are provided to Rojas, he shall use them to return his QBE-issued laptop no later than May 9, 2025.

5. Rojas shall promptly cooperate in full with Mphasis' counsel in this matter to return all such confidential information of Mphasis in his possession, custody, or control, including whether maintained in hard copy or electronically, and shall not retain such information in any format, and Rojas shall further certify under oath the identity of all third parties with whom Rojas has shared or attempted to share such information.

6. Rojas shall cooperate in full with Mphasis' counsel to arrange for a neutral forensic examiner selected by Mphasis to conduct an immediate forensic examination of Rojas' personal Mac computer, including all email accounts, cloud accounts, and other relevant software/hardware utilized by Rojas since March 13, 2025.

ECF No. 65 ("TRO"). Second, on June 10, 2025, the Court entered a preliminary injunction ("PI") ordering the same relief, with additional provisions providing that Rojas cease contacting QBE, the client of Mphasis for whom he created content while employed by Mphasis, and its employees; that Rojas remove any websites using Mphasis in the domain name; and that he cease creating websites disparaging Mphasis. ECF No. 207 ("PI"). The Court clarified that the PI would remain in effect until further orders indicating otherwise. *Id.*

Third, on August 20, 2025, Magistrate Judge Wang issued an order requiring Rojas to pay $9,194.41 (the "Imaging Sanction") in attorneys' fees and costs incurred in connection with a failed forensic imaging of Rojas's laptop on May 29, 2025. *See* ECF No. 404 ("Imaging Sanctions Order"). Following the TRO, the Court had referred the case to Magistrate Judge Wang to oversee the forensic imaging of Rojas's laptop. ECF No. 68, at 2. Rojas had agreed to bring his laptop to the Courthouse on May 29, 2025, where a neutral forensic examiner, provided by Mphasis, was to perform the imaging mandated by the TRO. ECF No. 518 ("Karseboom Decl."), at ¶¶ 19-20; Ex. E.; *see* ECF No. 118 (ordering the same). In advance, Magistrate Judge Wang had issued an Order warning Rojas that "failure to cooperate with the forensic imaging process that the Court has directed will be a direct violation of my Order at ECF 118 and Judge Furman's TRO at ECF 65 and will subject Defendant to sanctions under Fed. R. Civ. P. 16 and 37, 28 U.S.C. § 1927, and the Court's inherent authority. Those sanctions may include . . . a finding of default and/or contempt." ECF No. 136, at 4. Nevertheless, Rojas failed to bring his laptop on May 29, 2025. After issuing an Order to Show Cause, Magistrate Wang issued the Imaging Sanction. Karseboom Decl. ¶ 64; *see* ECF No. 140 ("Order to Show Cause"); Imaging Sanctions Order.

After conducting the evidentiary hearing and reviewing the evidence *de novo*, the Court concludes that Rojas flagrantly violated these three Orders, and adopts the following factual findings (organized by category of violation):

1. **<u>Rojas Distributed Confidential Mphasis PowerPoints and Internal Communications in Violation of the TRO and PI</u>**

- On May 7, 2025, Rojas was in possession of and emailed confidential Mphasis information to Kimberly Karseboom, Mphasis's counsel of record, and Julie Anderson, QBE's counsel of record. Ex. B.[1]

- The same day, Rojas also emailed Anderson saying "Julie, don't worry about the 66-page [QBE] PowerPoint. It was a sales pitch. (Yikes!) I trimmed it down to 8 pages myself. That's what I actually used." Ex. B. at 16.

- On May 13, 2025, Rojas emailed the Pro Se Docket Clerk, Mphasis Counsel, and Anderson, again attaching a confidential QBE PowerPoint and requesting to docket the QBE PowerPoint. Karseboom Decl. ¶ 16.

- That same day, Rojas filed the QBE PowerPoint and screenshots of various confidential internal communications between Mphasis employees. Karseboom Decl. ¶ 17; ECF No. 105.

- Rojas filed the QBE PowerPoint on May 14, 2025, ECF No. 115-2; Karseboom Decl. ¶ 22; on June 30, 2025 (twice), ECF Nos. 291-3; 292-1; Karseboom Decl. ¶ 58; on July 2, 2025, ECF No. 332-1; Karseboom Decl. ¶ 59; on September 4, 2025, ECF No. 411-2; Karseboom Decl. ¶ 68; on September 14, 2025 (twice), ECF Nos. 421, 422; and on September 16, 2025, ECF No. 428-7; *see also* Contempt Hearing Tr. 13 (Rojas admitting that he filed the QBE PowerPoint repeatedly on the docket).

- As early as May 2025, Rojas was advised repeatedly that distributing the QBE PowerPoint on the docket violated the TRO, not only by Mphasis, *see* ECF No. 116 (noting on May 15, 2025, that "Plaintiff's counsel has alleged that [he] violated the TRO by submitting Exhibit B as part of my Rule 56 filing and referencing it on my whistleblower website."), but also by the Court, *see* ECF No. 84 (reminding Rojas on May 8, 2025, that "the TRO . . . prohibits Defendant from accessing, possessing, disclosing and/or using all confidential Mphasis information, 'including but not limited to Mphasis emails and any documents, digital or hardcopy, created or used for Mphasis' clients.'" (citing ECF No. 65)); ECF No. 206, at 2 (noting on June 9, 2025 that "Rojas has on several occasions — and despite the Court's direct admonition, *see* ECF No. 84 —

[1] All exhibit citations refer to the exhibits submitted by Mphasis in support of Magistrate Judge Wang's Second R&R at the contempt hearing, as docketed at ECF No. 518.

disseminated Mphasis work product *on the docket* and to nonparties such as Mphasis's client, QBE." (emphasis added)).

- On September 9, 2025, Rojas filed a different confidential PowerPoint that Mphasis created for its client, Lucid Motors. Karseboom Decl. ¶ 68; ECF No 414-1.

**2. <u>Defendant Created Email Accounts and Websites in Mphasis's Name</u>**

- On May 1, 2025, Rojas admitted to creating the domain name "mphasis.cloud." *See* ECF No. 36 ("Def.'s Opp'n to TRO"), at 2; ECF No. 32 ¶ 6.

- On May 7, 2025, Rojas used the email address "legal@mphasis.cloud" to send the QBE PowerPoint to Karseboom and Anderson. Karseboom Decl. ¶ 10; Ex. B.

- Rojas admitted that he registered the email address "legal@mphasis.cloud." ECF No. 91 at 1 ("Def.'s Opp'n to Pl.'s Mot. for Sanctions").

- On May 16, 2025, Rojas admitted that he was continuing to operate https://qbe.world and https://mphasis.cloud. *See* ECF No. 122 (inviting the Court to view a "media kit" on the websites that "document[ed]" his "legally protected whistleblower disclosures").

- On June 9, 2025, Rojas certified to Magistrate Judge Wang that he took down "mphasis.cloud." ECF No. 209 ("Def.'s Notice of Compliance and Request for a Protective Order"). Rojas simultaneously certified that mphasis.cloud "now redirects" to "QBE.world" and no longer contained references to Mphasis. *Id.*

- On June 11, 2025, Mphasis informed Rojas that his website, https://qbe.world/mphasis-retaliation-%26-age" was in violation of the PI and requested it be removed. Ex. AP. Thereafter, Rojas confirmed that he had removed the website. *Id.*

- Over several days, beginning on or about June 11, 2025, Rojas gave an interview to Indian journalist Jas Bardia during which he shared links to the websites he had created and discussed the TRO and his use of an email impersonating Mphasis's CEO. Karseboom Decl. ¶ 45; Ex. X. Rojas called the TRO "largely theatrical." *Id.* at 71.

- On June 15, 2025, Mphasis's counsel visited "mphasis.cloud" and captured screenshots that showed commentary on this litigation. Karseboom Decl. ¶ 48; Ex. AQ; ECF No. 222-1.

- The same day, Rojas wrote to Karseboom that "[t]here is no provision in the Preliminary Injunction or TRO. . . that lawfully enjoins the continued operation of mphasis.cloud." Karseboom Decl. ¶ 49; Ex. AQ.

- On June 17, 2025, Rojas certified to the Court that "mphasis.cloud" was "purged of content." ECF No. 232. Rojas also certified, again, that "mphasis.cloud" now "redirect[s]" to "QBE.world." *Id.* Rojas further certified that "QBE.world," "no longer uses Mphasis in its name or contains disparaging content." *Id.*

- On October 15, 2025, Rojas admitted that he was still operating the websites. *See* ECF No. 463 (inviting Court to view "unredacted" exhibits, including Mphasis and QBE communications at "www.mphasis.cloud").

- On October 20, 2025, Rojas admitted that he was "continuing to maintain the Mphasis / QBE Whistleblower & Compliance Archive (https://qbe.world)," which contained confidential information. ECF No. 473.

- As of January 30, 2026, Rojas was operating a new website, Mphasis.eu, with an entire section titled "Stricken_ECF_Filings," which allowed the public to download confidential information. Rojas admits that he created Mphasis.eu, and states that he made the website before the TRO. Ex. AM.

- As of February 11, 2026, QBE.world was still active. Karseboom Decl. ¶ 88.

- At the March 12, 2026 hearing, Rojas attested that he removed QBE.world days after and that he was unaware that the TRO covered the website. Contempt Hearing Tr. 8-9. Rojas further admitted that "he realized [the email violated the TRO and the PI] when [Mphasis's counsel] brought it up." *Id.* at 10:7-10:8.

- On June 8, 2026, Rojas emailed Mphasis, advising the Court that he had created yet another website, QBE.global, that violated the TRO. ECF Nos. 560, 560-1.

- As of August 6, 2026, that website is still live and contains content disparaging Mphasis. *See QBE.global | Mphasis.global Governance Failures*, QBE.global (last visited Aug. 6, 2026) [https://perma.cc/S4UH-M8KD].[2]

3. **<u>Rojas Contacted Mphasis's Employees and Clients.</u>**

- On June 27, 2025, Rojas twice emailed the CEOs of Mphasis and QBE, purporting to "notify corporate leadership" that he had filed a Rule 11 Sanctions motion against Ms. Karseboom. Karseboom Decl. ¶ 53; ECF Nos. 286-8 and 286-9.

- That same day, Karseboom informed Rojas that his email violated the PI. Karseboom Decl. ¶ 54.

- On September 16, 2025, Rojas copied Puran Mehta, an employee of Mphasis, on an email. Karseboom Decl. ¶ 74; Ex. AR.

[2] Below, the Court orders Rojas to take this website down no later than August 14, 2026.

4. **Rojas Failed to Comply with the Forensic Imaging of his Laptop and the Imaging Sanctions Order.**

- As noted, on August 20, 2025, Magistrate Judge Wang ordered Rojas to pay Mphasis $9,194.14 no later than September 30, 2025. *See* Imaging Sanctions Order.
- On October 14, 2025, Mphasis filed a motion for further sanctions because Rojas had not paid any portion of the Imaging Sanctions. *See* ECF No. 456.
- On October 15, 2025, Rojas filed a response admitting he had not paid any portion of the Imaging Sanctions but alleging that he had only "$1000" to his name, was unemployed, and could not pay the Imaging Sanctions. *See* ECF No. 461 ("Def.'s Opp'n to Pl.'s Mot. for Additional Sanctions"), at 2; ECF No. 406, at 5.
- At the March 12, 2026 contempt hearing, Rojas stated that his unemployment payments had just ended and provided documentation indicating that he only had $200 left in his savings account. Contempt Hearing Tr. 14-15. He stated that he is the shareholder for a co-op unit in Chelsea and has been able to provide for himself through his unemployment checks. *Id.* at 15. He has submitted a social security application for early retirement. *Id.*
- After the contempt hearing, Rojas transferred his laptop to Mphasis's counsel for imaging. Contempt Hearing Tr. 36. On April 13, 2026, the Court oversaw the successful forensic imaging of Rojas's laptop. ECF 540.

## DISCUSSION

Rojas has flagrantly violated Court orders. He has abused the judicial process through excessive filings, as reflected in a docket that now exceeds 500 entries. And he has repeatedly flouted the Court's many warnings that his actions could and would result in sanctions and/or contempt. Consistent with Magistrate Judge Wang's recommendations in the Second R&R, this warrants a finding of civil contempt and the imposition of sanctions.

The Court first turns to Magistrate Wang's recommendation that Rojas be held in civil contempt and then addresses what sanctions are warranted in light of Rojas's conduct.

### A. Civil Contempt

"A civil contempt order is warranted only if the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *Nunez v. New York City Dep't of Correction*, 758 F. Supp. 3d 190, 217 (S.D.N.Y. 2024) (cleaned up and

quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks omitted). Compensatory sanctions may include attorney's fees and other related costs where the contempt is willful. *See, e.g.*, *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d. Cir. 1984). "[W]illful contempt is one where the 'contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply.'" *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 249 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1071 (2d Cir. 2000), and *aff'd sub nom. Bear U.S.A., Inc. v. Bing Chuan Grp. U.S.A., Corp.*, 216 F.3d 1071 (2d Cir. 2000) (citation omitted).

On *de novo* review, the Court holds Rojas in civil contempt substantially for the reasons set forth by Magistrate Judge Wang in the Second R&R. The undersigned and Magistrate Judge Wang issued at least three clear and ambiguous orders that Rojas violated, collectively, *dozens* of times — to wit, the TRO, ECF No. 65, the PI, ECF No. 207, and the Imaging Sanctions Order, ECF No. 406. In violation of these Orders, Rojas continued to maintain email addresses and websites under Mphasis's name; maintained websites that disparage Mphasis; contacted Mphasis employees; distributed confidential PowerPoints at least a dozen times; and failed to pay any portion of the Imaging Sanction. *See* Findings of Fact. Until the March 12, 2026 contempt hearing, he repeatedly refused to turn over his laptop for forensic imaging, stalling this case for over a year. *See* Contempt Hearing Tr. 38. And all these violations occurred notwithstanding

repeated and explicit warnings from both the undersigned and Magistrate Judge Wang that Rojas was violating Court Orders and that continuing violations could be subject to sanctions and/or contempt. *See* Second R&R 24-25; ECF No. 84, at 2; ECF No. 136, at 4.

If, as here, a court establishes that court orders have not been complied with, the burden shifts to the alleged contemnor to show that compliance with the orders was impossible. *M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*, 853 F. App'x 690, 693 (2d Cir. 2021) (citing *In re Marc Rich & Co., A.G.*, 736 F.2d 864, 866 (2d Cir. 1984)). A party "asserting that compliance with a court order constituted an inability or impossibility must prove 'clearly, plainly and unmistakably' that 'compliance is impossible.'" *BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, No. 22-CV-2070 (LJL), 2022 WL 17581775, at *7 (S.D.N.Y. Dec. 12, 2022) (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995)). Here, Rojas does not — and could not — argue that he was incapable of complying with the relevant portions of the TRO or the PI. *See also* Second R&R 18-19. Accordingly, after conducting a *de novo* review of the record and holding an evidentiary hearing, the Court holds Rojas in civil contempt for his repeated and willful violations of the TRO and the PI.

The Court hesitates, however, to find Rojas in civil contempt for his failure to pay Mphasis pursuant to the Imaging Sanctions Order. "[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." *Huber*, 51 F.3d at 10. The alleged contemnor must establish his inability "clearly, plainly, and unmistakably." *Id.* "Conclusory statements are inadequate to carry this burden." *Id.* Rojas asserts that he is "unemployed, without assets and simply incapable of paying the [$]9,194.14 in sanctions." Def.'s Opp'n to Pl.'s Mot. for Additional Sanctions 3. Initially, in support of his claim, Rojas provided an unsupported

declaration that he has only "$1000 to [his] name." *See id*. at 2-3. At the hearing, however, Rojas provided a financial statement to the Court indicating that he has only $200 in his savings account. Contempt Hearing Tr. 14. While the Court is skeptical that Rojas has no other access to funds (especially given the fact that he owns a Chelsea apartment), the Court declines to hold him in contempt for failing to pay the Imaging Sanctions Order in light of the evidence submitted supporting Rojas's inability to pay. *See also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest") (internal quotation marks omitted)). This ruling applies solely to the charge of civil contempt and does not constitute a finding that Rojas is unable to pay the Image Sanctions Award in the future.

**B. Sanctions**

That prompts the question of what sanctions are warranted for Rojas's conduct. "Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent power." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997). A district court "has the inherent power to supervise and control its own proceedings and to sanction . . . a litigant for bad-faith conduct or for disobeying the court's orders. . . ." *Mickle v. Morin,* 297 F.3d 114, 125 (2d Cir. 2002). "[W]hile pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions." *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). "Among the sanctions available to the district court is the power to dismiss the lawsuit entirely" or enter default. *Koehl v. Greene*, 424 F. App'x 61, 62 (2d Cir. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991));

*Chevron Corp. v. Donziger*, 833 F.3d 74, 147 (2d Cir. 2016) ("[A] just [sanctions] order may include rendering a default judgment against the disobedient party." (cleaned up and quoting Fed. R. Civ. P. 37(b)(2)(A)(vi)).

Civil contempt sanctions may be used to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *N.Y. Stale Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989); *see also, e.g.*, *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014) ("It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive."). Where a sanction is intended to be coercive, courts have "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982). Moreover, Rule 37 of the Federal Rules of Civil Procedure dictates that, if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," including "rendering a default judgment against the disobedient party," as well as monetary and other "just" sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

Pursuant to Rules 16 and 37 as well as its inherent authority, the Court concludes that the following sanctions are warranted: (1) that Rojas be found in default; (2) that Mphasis be awarded compensatory sanctions, to the extent that Rojas is able to pay them; and (3) that Rojas is enjoined, without prior leave of the Court, from filing any further actions against Mphasis, QBE, or any of Mphasis's other clients, for actions arising from or relating to his employment with Mphasis, including collateral attacks on any decision rendered in this proceeding. The Court will discuss each of these sanctions in turn, beginning with default.

**1. Default**

Entering a default as a sanction may be appropriate based on the consideration of "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Park v. Kim*, 91 F.4th 610, 612 (2d Cir. 2024) (discussing Rule 37); *see also Negron v. Woodhull Hosp.*, 173 F. App'x 77, 78 (2d Cir. 2006). Substantially for the reasons stated by Magistrate Judge Wang, and based on the Court's *de novo* findings, the Court concludes that all four factors weigh in favor of default.

First, Rojas's violations of the TRO and PI were plainly willful. Rojas's claims that he was confused by the Court's orders and that he attempted to comply in good faith are belied by the record. Rojas Decl. ¶¶ 6-13; Def. Obj. 1; Def.'s Obj. Sum. 2. Rojas has repeatedly made false representations to the Court, *see e.g.*, ECF Nos. 209, 232 (misrepresenting that qbe.world does not disparage Mphasis); ECF Nos. 286-11; 222-1 (screenshots of qbe.world); openly violated Court orders and even boasted of those violations — at one point dismissing the TRO as "theatrical," and stating that "[b]oth whistleblower sites are back." Ex. X at 71. What is more, Rojas filed the same confidential QBE PowerPoint a dozen times between May and October 2025, notwithstanding countless warnings, orders, and instructions not to do so. *See* Findings of Fact Section I. Such conduct leaves no serious question as to willfulness. *See Reinhardt v. U.S. Postal Serv.*, 150 F. App'x 105, 107 (2d Cir. 2005) (holding that the plaintiff's "defiance" of court orders was "willful" due to number and clarity of unheeded orders combined with court's explicit warnings of possible dismissal which together created a "record of sustained misconduct").

Both Magistrate Judge Wang and the undersigned have repeatedly warned Rojas that there would be consequences for violating Court orders, *see* Second R&R 24-25; ECF No. 84, at 2; ECF No. 136, at 4 (warning Rojas that his failure to comply with a Court Order may result in sanctions including "monetary sanctions . . . a finding of default and/or contempt."); ECF Nos. 405, 442 (same). Magistrate Wang has stricken filings submitted in defiance of the TRO and PI and attempted lesser monetary sanctions in an effort to secure compliance. Yet each of these measures has been largely ignored. *See* Second R&R 23.[3] Where, as here, there has been a "continuing saga" of noncompliance and disrespect for the Court, entering a default is appropriate. *U.S. Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 955 (2d Cir. 1983); *see* Second R&R 24 (collecting cases). This sanction is not disproportionate, as Rojas claims. *See* Def. Obj. 1.[4] The Court's findings show that Rojas has engaged in "sustained and willful intransigence in the face of repeated and explicit warnings from the court," which warrants the most severe sanction — "dismissal of [the] action." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994). "[A]ny lesser sanction here would be an exercise in futility, given

---

[3] Rojas did reduce the rate of his vexatious filings once Magistrate Judge Wang issued an order requiring that he pay $5 for each violation of a filing injunction. Moreover, he has — finally — complied with the provisions of the TRO and the PI requiring that he turn over his computer for forensic imaging. *See* ECF No. 540.

[4] The cases cited by Rojas support the Court's determination or are easily distinguishable. Def.'s Obj. 4; *see Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009) (finding no abuse of discretion when the district court had dismissed a claim after a pro se litigant defied discovery orders); *Valentine v. Museum of Mod. Art*, 29 F.3d 47, 48 (2d Cir. 1994) (finding no abuse of discretion when the district court had dismissed a case when litigant was "repeatedly warned of sanctions that could be imposed if he refused to comply with discovery orders"); *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) (dismissing a case under Rule 41(b) even where Plaintiff "did not miss a filing deadline" or "fail to comply with a discovery order"); *Baptiste v. Sommers*, 768 F.3d 212, 218 (2d Cir. 2014) (reversing dismissal under Rule 41(b) when the *pro se* plaintiff's delay in amending his complaint was a result of serious illness, and he responded in timely fashion when the district court issued a warning of potential dismissal).

[Rojas's] deliberate refusal to cooperate in this litigation." *Koch v. Rodenstock*, No. 6-CV-6586 (BSJ) (DF), 2010 WL 2010892, at *7 (S.D.N.Y. Apr. 23, 2010), *report and recommendation adopted*, 2010 WL 2010900 (S.D.N.Y. May 18, 2010).

Having concluded that Rojas's conduct warrants default, "the Court must follow the procedure for entry of a default judgment as set forth in Rule 55." *Coach, Inc. v. O'Brien*, No. 10-CV-6071 (JPO) (JLC), 2011 WL 6122265, at *5 (S.D.N.Y. Nov. 28, 2011), *adopted as modified on other grounds*, 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012) (cleaned up); *see also Cherotti v. Exphand, Inc.*, No. 20-CV-11102 (SLC), 2023 WL 5526625, at *10 (S.D.N.Y. Aug. 28, 2023); Second R&R 31-32. "[U]nless a party's pleading states a claim and contains sufficient allegations to support the entry of a default judgment in the Rule 55 context, awarding a default judgment as a sanction would be excessive and would violate the basic rule of proportionate sanctioning." *JCDecaux Airport, Inc. v. Tom Sawyer Prods., Inc.*, No. 16-CV-5067 (NRB), 2020 WL 635580, at *5 (S.D.N.Y. Feb. 11, 2020); *see also Taizhou Zhongneng Imp. and Exp. Co., Ltd. v. Koutsobinas*, 509 F.App'x 54, 58 (2d Cir. 2013) ("Because the well-pleaded allegations in [plaintiff's] complaint do not state a claim against [defendant], a default judgment should not have been entered against him in the first place."). Moreover, with respect to monetary relief, the district court must "ascertain the amount of damages with reasonable certainty." *Get Weird, LLC v. A6GSQ Store*, No. 24-CV-7533 (JGK) (GWG), 2025 WL 2472887, at *2 (S.D.N.Y. Aug. 28, 2025), *report and recommendation adopted*, 2025 WL 2841185 (S.D.N.Y. Oct. 6, 2025) (cleaned up). The Court thus re-refers the case to Magistrate Judge Wang to "assess[] whether [Mphasis's] allegations in the . . . Complaint, accepted as true, are sufficient to establish Defendants' liability" and, if the allegations are sufficient, for an

inquest into appropriate damages and permanent injunctive relief. *Cherotti*, 2023 WL 5526625, at *10.

**2. Compensatory Sanctions**

Next, the Court concludes that compensatory sanctions are warranted. Substantially for the reasons stated by Magistrate Judge Wang, Mphasis is entitled to compensatory sanctions in the full amount of Mphasis's attorneys' fees and costs incurred due to Rojas's violations of the TRO and the PI — in addition to the outstanding payment Rojas still owes pursuant to the Imaging Sanctions Award. *Cf.* Second R&R 26. That said, any award of attorneys' fees through sanctions is subject to the caveat that the Court must take into account the financial circumstances of the sanctioned party. *See Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992); *see also Toliver v. Cnty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) ("[F]ee awards are at bottom an equitable matter, [and] courts should not hesitate to take the relative wealth of the parties into account." (internal quotations omitted)); *Mantell v. Chassman*, 512 Fed. App'x 21, 24 (2d Cir. 2013) (finding error because the district court "fail[ed] to consider [the sanctioned attorney's] financial hardship argument in calculating an appropriate sanction."). Accordingly, the matter of compensatory sanctions — and whether and what to extent they are warranted in light of Rojas's financial situation — is also re-referred to Magistrate Judge Wang for consideration in combination with the inquest on damages. *See* Contempt Hearing Tr. 25 (Rojas suggesting that he would be able to make scheduled payments based on his means); *id.* at 37 (Rojas stating that he can likely pay $25 a month until he can get a job or his social security starts).

**3. Filing Injunction**

Finally, Magistrate Judge Wang recommends that Rojas be enjoined from filing further actions against "Plaintiff, QBE, or any of Mphasis's other clients, for actions flowing from his

employment with Mphasis, including collateral attacks on any decision rendered in this proceeding," without prior leave of Court. Second R&R 27. The Court agrees.

The Court may issue a filing injunction when a litigant has a "history of litigation entailing 'vexation, harassment and needless expense to [other parties]' and 'an unnecessary burden on the courts and their supporting personnel.'" *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984)); *see Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." (internal quotation marks omitted)). In determining "whether to restrict a litigant's future access to courts," courts are to consider five factors:

> (1) the litigant's history of litigation and whether it entailed bringing vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation (e.g., whether the litigant has an objective good-faith expectation of prevailing); (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (per curiam) (quoting *Safir*, 792 F.2d at 24). The "district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir. 1998) (*per curiam*).

Upon consideration of the five *Safir* factors, the Court concludes that an injunction enjoining Rojas from future filing on the subject matter of the instant dispute, without prior leave of Court, is warranted, substantially for the reasons stated by Magistrate Judge Wang. Rojas has abused the Court system by flooding the docket with duplicative and frivolous filings. In doing so, he has imposed unnecessary burdens on both Mphasis and court personnel. *See* Second R&R 27-28 (describing the duplicative, frivolous, and excessive filing in this case and in other cases

he has brought); *id.* (applying the five factors set forth in *Safir*); *In re McDonald*, 489 U.S. 180, 184 (1989) ("Every paper [he has] filed with the Clerk of this Court, no matter how repetitious or frivolous, require[d] some portion of the institution's limited resources."). Moreover, Rojas has had ample opportunity to be heard on this point, including at the hearing before this Court on March 12, 2026. Absent an injunction, it is likely, if not certain, that "onerous, multiplicitous, and baseless litigation" will persist. *Safir*, 792 F.2d at 24; *see Vidurek v. Koskinen*, 789 F. App'x 889, 895 (2d Cir. 2019) (affirming a district court's decision to issue a filing injunction against *pro se* litigant with extensive litigation history); *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 715 (2d Cir. 2019) ("[The Circuit] has 'not altogether excused frivolous or vexatious filings by *pro se* litigants.'" (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam)); *Bey v. City of New York*, No. 13-CV-9103 (AJN), 2015 WL 5473155, at *2 (S.D.N.Y. Sept. 16, 2015) ("[L]imitations [on vexatious litigation] have taken the form of injunctions requiring a plaintiff to obtain the leave of court for any future filings" and imposing similar filing injunction).

Accordingly, Rojas is hereby enjoined from filing any new action in the Southern District of New York against Mphasis, QBE, or any of Mphasis's other clients, for actions flowing from or relating to his employment with Mphasis, including collateral attacks on any decision rendered in this proceeding, without prior leave of Court. *See Safir*, 792 F.2d at 25 (holding that an injunction that precludes a plaintiff "from instituting any action whatsoever, is overly broad"); *see also Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 31 (2d Cir. 2003) (affirming a district court order "restricting plaintiffs' ability to initiate future federal litigation" and requiring that "plaintiffs append the District Court's opinion and order of injunction to future filings in state courts"). Rojas must attach a copy of the proposed complaint and a copy of this Opinion

and Order to any motion seeking leave to file. The motion must be filed with the Pro Se Intake Unit of this Court. If Rojas violates this Order by filing an action without filing a motion for leave to file, the action will be dismissed for failure to comply with this Order and Rojas may be subject to sanctions.

## CONCLUSION

In sum, and for the reasons discussed above, Magistrate Judge Wang's Second R&R is hereby ADOPTED, except insofar as it recommended sanctions for Rojas's violation of the Imaging Sanctions Order. The Clerk of Court is hereby directed to enter Rojas's default on the docket and issue a certificate of default. By separate Order, the Court will file an amended Order of Reference re-referring the case to Magistrate Judge Wang to assess whether Mphasis's allegations in the Complaint, accepted as true, are sufficient to establish Rojas's liability, and, if appropriate, for an inquest on damages and other appropriate relief — including compensatory sanctions — given Rojas's financial situation. In light of the foregoing, the Court declines to adopt the First R&R on the grounds that it is academic due to the entry of a default against Rojas.

Further, for substantially the same reasons discussed above and pursuant to Rules 37 and 41 and the Court's inherent power, the Court dismisses with prejudice Rojas's counterclaims, ECF Nos. 210, 213, and the duplicative claims he has asserted against Mphasis in *Rojas v. Mphasis Corporation*, 25-CV-5916. Fed. R. Civ. P. 37(b), 41(b); *see JCDecaux Airport, Inc. v. Tom Sawyer Prods., Inc.*, No. 16-CV-5067 (NRB), 2020 WL 635580, at *5 (S.D.N.Y. Feb. 11, 2020) ("Simply put, for essentially the same reasons that we concluded that an entry of default

judgment could be available as a sanction under the facts of this case, we conclude that the sanction of dismissing defendants' counterclaim is available as well.").[5]

Finally, Rojas is ORDERED to take down the website QBE.global no later than **August 14, 2026**. *See* ECF No. 560. Failure to do so may result in additional sanctions.

The Court feels compelled to once again express its firmly held view that, notwithstanding the Court's rulings above, it is in the interests of both parties and the Court, not to mention justice, to resolve this case through settlement. Further costly (and risky) litigation is in the interests of neither the parties nor the Court.

The Clerk of Court is direct to seal (i.e., make visible only to the Court) ECF No. 332-1, which contains the confidential QBE PowerPoint and to terminate ECF No. 560.

SO ORDERED.

Dated: August 6, 2026
New York, New York

JESSE M. FURMAN
United States District Judge

[5] For avoidance of doubt, the Court has also considered the factors relevant to dismissal of a case pursuant to Rule 41(b), which overlap in large part with the Rule 37 factors. *See, e.g.*, *Sanchez v. Dutchess Cnty. Dep't of Cmty. & Fam. Servs.*, No. 21-2408, 2023 WL 3047971, at *1 (2d Cir. Apr. 24, 2023) (observing that courts must consider "(1) whether the plaintiff's failure to prosecute caused significant delay; (2) whether the plaintiff was notified that further delay would result in dismissal; (3) whether further delay would prejudice the defendant; (4) whether the court carefully balanced its need to make sure it can continue to efficiently tend to other cases that come before it against the plaintiff's right to argue their case; and (5) whether the court adequately considered whether a less harsh sanction would be as effective").