UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MPHASIS CORPORATION,
Plaintiff,
-v-
ALBERT ROJAS,
Defendant.
Case No. 25-CV-3175 (JMF) (OTW)

DEFENDANT'S REQUEST FOR RECORD-BASED RELIEF REGARDING ECF NO. 579

Dear Judge Furman:

Defendant Albert Rojas, proceeding pro se, respectfully requests record-based relief from ECF No. 579 and from the portions of ECF Nos. 570 and 575 that depend upon a factual characterization contradicted by Plaintiff's own docketed evidence. This filing does not ask the Court merely to repeat or reconsider a conclusion. It asks the Court to perform the judicial task that remains undone: examine the identified evidence, state what the docket establishes, and ensure that case-dispositive sanctions rest upon the actual record.

ECF No. 579 summarily denied Defendant's request and warned that further attempts to relitigate these issues would result in additional sanctions. But the precise record question presented in Section II.A was never answered: **Where in the docket does the record support the factual proposition upon which the Court imposed case-dispositive sanctions?**

That question was presented under *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), which recognizes reconsideration where the Court has overlooked controlling decisions or data that might reasonably be expected to alter the conclusion reached.

The Court did not identify the supporting entry or page. It did not address the contrary evidence filed by Plaintiff. It did not reconcile its characterization with the contemporaneous communications appearing in ECF No. 14.

## I. PLAINTIFF’S OWN FILING CONTAINS THE UNADDRESSED EVIDENCE

Plaintiff placed ECF No. 14 and its exhibits on the docket on April 30, 2025. Those materials contain the underlying email and chat communications documenting the endpoint restrictions, Mphasis management’s transmission of the QBE presentation, Waghmode’s assignment and supervision of the work, and the resulting route through Defendant’s personal endpoint.

1. ECF No. 14-38 reproduces Mphasis’s October 31, 2024 internal email stating: “Since you already got client laptop, Mphasis IT team will not provide you Mphasis laptop.”

2. ECF No. 14-38 also reproduces the December 18, 2024 directive from Mphasis Senior U.S. Administration Officer Jared Bulger:
   "You can use personal machines, but you will be limited to WEB Version only. This has been an Mphasis CIO/CRO policy for at least 5 years. ONLY Mphasis Domain Joined machines can use Desktop apps, which allow downloading and storing of Mphasis data."
   ECF No. 14-38 further states that Defendant was not provided a domain-joined Mphasis laptop, VPN credentials, or access to Mphasis SharePoint or other internal repositories. It also contains the December 17, 2024 exchange in which another employee confirmed that he used a separate Mphasis laptop for Mphasis email while maintaining a QBE laptop for QBE applications.

3. ECF No. 14-4 records the resulting presentation-routing pathway. At 10:23 a.m. on February 28, 2025, Mphasis Vice President Ruturaj Waghmode transmitted the "QBE draft deck" to Defendant's Mphasis email account. At 11:01 a.m., Defendant forwarded that same message and attachment from his Mphasis account to his personal email account.

4. ECF No. 14-41 contains the contemporaneous management instructions. Waghmode told Defendant that he had placed George's deck and a co-pilot version in the shared location and directed him to "create one which blends these 2 + Lucid pitch." Later that Friday, Waghmode asked Defendant for the "uplifted deck version." Defendant responded that it would be ready "first thing Monday."

5. ECF No. 14-41 at pages 70–71 records Defendant transmitting work on Saturday and Waghmode reviewing it. Waghmode stated that Defendant had gone "a few steps ahead," directed that the immediate proposal concern a two-to-three-week discovery workshop, and explained what should follow that discovery.

6. ECF No. 14-41 at pages 72–75 records the resulting work and Defendant's contemporaneous statement: "Per Ruturaj's request, I rewrote George's QBE proposal over the weekend."

The evidence therefore documents the full operational sequence: Mphasis denied Defendant a domain-joined Mphasis endpoint; limited personal machines to web-only access; reserved downloading and storage of Mphasis data for domain-joined machines; transmitted the QBE presentation to Defendant's Mphasis account; directed him to create the blended presentation; requested the uplifted version; received his commitment to complete it over the weekend; reviewed his Saturday work; and directed the proposal's scope.

The record documents two distinct endpoint failures. First, Mphasis refused to provide Defendant an Mphasis laptop because he had received a QBE client laptop, thereby treating a QBE-controlled endpoint as a substitute for Mphasis-controlled infrastructure. The December 17, 2024 exchange contained in ECF No. 14-38 confirms that another employee maintained the proper separation: a QBE laptop for QBE applications and a separate Mphasis laptop for Mphasis email and work.

Second, the record contains Defendant's December 22, 2024 communication stating that the QBE laptop was locked and that he had obtained a personal Mac. Mphasis still did not provide him a usable Mphasis-issued endpoint. Nevertheless, on February 28, 2025, Mphasis management transmitted the QBE presentation to Defendant's Mphasis account and directed him to complete the presentation work that Waghmode subsequently reviewed and supervised.

ECF No. 14-4 captures the realized pathway: Waghmode transmitted the QBE presentation to Defendant's Mphasis account, and Defendant then forwarded it to his personal account so that he could perform the assigned work on the only usable endpoint available to him. Had Mphasis supplied the separate domain-joined endpoint Defendant repeatedly requested, that transmission pathway would not have been operationally necessary.

**That is the dual-endpoint failure: Mphasis first treated a QBE-controlled endpoint as a substitute for its own infrastructure and later assigned and supervised Mphasis work after the QBE device became unavailable, while still withholding a usable Mphasis-controlled endpoint. Mphasis's own communications established that personal machines were limited to web-only access and that only domain-joined machines could download and store Mphasis data. One authorized identity was therefore sufficient to move enterprise material between trust zones without any sophisticated external intrusion.**

ECF No. 575 recited that reconsideration may be warranted when a movant identifies controlling decisions or data that the Court overlooked. Defendant did precisely that by identifying specific docketed evidence at ECF Nos. 14-38 and 14-41. ECF No. 14-4, also filed by Plaintiff, contains the underlying presentation-routing email that completes the documented sequence. Yet ECF No. 575 did not determine whether that evidence had been overlooked or address what it establishes. Instead, it denied reconsideration by attributing to Defendant the argument "that the materials he has shared were not confidential because the laptop that he was given to work on the materials belonged to QBE, not Plaintiff Mphasis Corporation." That reasoning announces the overlooked-data standard and then fails to apply it to the identified data. It treats an unanswered evidentiary showing as mere repetition and answers a proposition different from the record-based argument presented. Whether QBE owned the laptop does not resolve who created and authorized the endpoint workflow, who transmitted and supervised the assignment, whether Defendant's conduct was directed or knowingly accepted by Mphasis management, or whether Mphasis could afterward attribute that workflow exclusively to Defendant. Plaintiff's own docketed evidence establishes that Mphasis withheld a usable Mphasis endpoint, transmitted the QBE presentation into the resulting workflow, assigned the weekend work, and reviewed its completion. A request to examine specifically identified, overlooked evidence does not become improper relitigation merely because the litigant previously attempted to bring the underlying issue to the Court's attention. **The Court cannot adjudicate Defendant's argument by ruling upon a substituted factual premise.**

## II. ECF NO. 579 DID NOT RESOLVE THE RECORD CONTRADICTION

ECF No. 579 does not identify any docket entry or page supporting the Court's contrary characterization. It does not address ECF Nos. 14-4, 14-38, or 14-41. It does not explain how the documented Friday assignment, weekend deadline, Saturday review, and management direction can be reconciled with the factual premise upon which the Court acted.

A summary denial does not resolve a documentary contradiction. And repetition is not the issue where the Court has never answered the specific, verifiable record question presented.

**The sanctions warning in ECF No. 579 was therefore entered before the Court demonstrated that it had read, understood, or addressed the evidence upon which Defendant's request was based.** That sequence matters. A litigant—particularly a pro se litigant—should not be threatened with punishment for identifying Plaintiff's own docketed evidence and asking the Court where its contrary factual premise appears in the record. If the Court reviewed that evidence, ECF No. 579 does not reveal that review. If the Court misunderstood Defendant's argument, the cited documents resolve that misunderstanding. **In either event, threatening Defendant instead of answering the record-based question was error and should be corrected.**

Defendant recognizes the Court's authority to control its docket and sanction abusive litigation conduct. But a good-faith request that the Court confront identified evidence filed by Plaintiff itself is not answered by threatening additional sanctions.

**The truth of a docketed record does not become irrelevant—or sanctionable—because acknowledging it exposes an unresolved defect in the Court's prior factual premise.**

Express words directing Defendant to forward the document were unnecessary. Mphasis knew Defendant had no usable Mphasis-issued endpoint, knew he could not access or retrieve the presentation from Mphasis SharePoint, transmitted the QBE presentation into the only available workflow, imposed the weekend assignment, and reviewed the resulting work. Authorization and knowing acceptance are established by that documented conduct. **Mphasis cannot create and supervise the only operational pathway available to Defendant and afterward characterize that pathway as Defendant's unilateral misconduct.**

**Sanctioning Defendant for presenting this evidence would not protect confidential information.** It would punish the person who identified the documented pathway by which confidential information crossed a security boundary, while leaving the pathway itself unexamined. **That result would discourage—not protect—the reporting of the conditions that make enterprise data breaches possible.**

The Court may reject Defendant's legal arguments and may weigh competing evidence against him. But case-dispositive sanctions must remain tethered to the evidence actually before the Court. Where Plaintiff's own filing contains the contrary documentary evidence, the Court must either reconcile that evidence with its premise or correct the premise. It cannot leave the evidence unanswered while continuing to rely upon the disputed characterization.

Defendant recognizes that the record involves multiple systems, endpoints, identities, permissions, and events occurring over several months. That complexity is precisely why these facts must be adjudicated on their merits—**not compressed into a summary characterization that the underlying documents contradict.**

ECF Nos. 575 and 579 demonstrate that the Court's characterization has not accounted for the documented sequence: the proposed QBE-endpoint workflow in October 2024, Defendant's personal-Mac workflow by December 2024, and Mphasis management's transmission and supervision of the QBE assignment through that personal-Mac workflow in February 2025. Where the documentary record establishes one sequence and the Court's orders proceed from another, the answer is not to threaten the pro se litigant who identifies the discrepancy. The answer is to examine the evidence.

That is why Defendant seeks restoration of his defenses and counterclaims and adjudication on the merits. A trial will permit authentication of the communications, testimony from the participants, examination of the endpoint architecture and permissions, **and a determination based upon what actually occurred—not upon a factual premise that cannot be located in the docketed record.**

Defendant recognizes that the Court may ultimately deny the requested relief. But any such ruling should identify the record supporting the Court's factual premise and address the contrary evidence filed by Plaintiff itself. If the Court declines to correct that premise, Defendant respectfully requests a reasoned ruling sufficient to permit meaningful appellate review. **Continued reliance upon a factual proposition that cannot be located in the docket is not a substitute for adjudication on the record.**

III. REQUEST FOR RELIEF

Defendant is not asking the Court to repeat its conclusion. Defendant is asking the Court to perform the judicial task that remains undone: examine Plaintiff's own docketed evidence and explain how the Court's factual premise can be reconciled with that record.

**A sanctions warning does not answer the documentary evidence, and it cannot substitute for identifying the record supporting a case-dispositive factual determination.** Defendant should not be sanctioned merely for directing the Court to evidence filed by Plaintiff and asking the Court to read and address it.

Accordingly, Defendant respectfully requests that the Court:

1. Conduct a substantive review of ECF No. 14-4 and the corresponding endpoint-provisioning and presentation-routing evidence at ECF Nos. 14-38 and 14-41;

2. Identify the specific docket entry and page supporting the Court's characterization of Defendant's endpoint argument and the factual premise underlying the sanctions imposed at ECF No. 570;

3. Address whether Plaintiff's own documentary evidence establishes that Mphasis management transmitted the QBE presentation to Defendant, directed him to revise it over the weekend, and reviewed and supervised that work;

4. Explain how the Court's contrary factual premise can be reconciled with that documentary record;

5. If no such record support exists, correct the factual premise rather than continuing to attribute to Defendant an argument he did not make;

6. Vacate the portions of ECF Nos. 570, 575, and 579 that depend upon that unsupported factual premise;

7. Vacate the default and restore Defendant's counterclaims at ECF Nos. 210 and 213 for adjudication on their merits;

8. Vacate and withdraw the sanctions warning in ECF No. 579 because Defendant's good-faith request to identify the record supporting a case-dispositive factual premise is neither abusive nor sanctionable, and because the warning was issued without addressing the documentary evidence upon which that request expressly relied; and

9. Grant such other and further relief as justice requires.

The Court has broad authority to manage this action, but that authority does not eliminate the obligation to base dispositive rulings upon the record actually before it. Plaintiff itself filed the evidence at ECF No. 14. **Defendant specifically identified that evidence. The Court has not addressed it**.

This is not a request that the Court accept Defendant's arithmetic. **It is a request that the Court show its own work.**

The Court is now formally on notice that the factual premise underlying its orders is not supported by the identified docketed record. **Defendant may be proceeding pro se, but a dispositive order cannot rest upon a factual event that never occurred and cannot be located in the record.** Defendant respectfully requests a ruling that addresses the evidence—not another conclusion that leaves the evidence unread and the contradiction unresolved.

Respectfully submitted,

Albert Rojas
Defendant Pro Se

Application DENIED. To the extent that Defendant believes the Court erred, he is free to argue the point on appeal following entry of final judgment. But he may not keep filing motions for reconsideration of points considered and rejected by this Court. Enough is enough here. Any future motion by Defendant to reconsider or reargue these points will result in the imposition of a $50 fine. The parties should focus their attention now on either resolving their disputes (which would, as the Court has noted, be in the interests of everyone involved) or on the proceedings before Magistrate Judge Wang, see ECF No. 580, which will presumably result in entry of a final judgment. After that, as noted, Defendant may raise his arguments on appeal.

The Clerk of Court is directed to terminate ECF No. 581.

SO ORDERED.

September 8, 2026